UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SABRINA N. OBREGON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Case No. CIV-21-739-SLP |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# COMPLAINT

Plaintiff, Sabrina N. Obregon, by counsel, states as follows for her Complaint against Defendant United States of America, and alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2. Prior to the institution of this action against Defendant United States, on April 11, 2018, Plaintiff filed an administrative tort claim with the Department of Veterans Affairs as required by 28 U.S.C. § 2675(a), which is attached as **Exhibit 1**.

3. The Department of Veterans Affairs acknowledged receipt of the administrative tort claim on April 11, 2018.

4. On May 18, 2021, the Department of Veterans Affairs issued final denial of the claim.

5. Accordingly, Plaintiff's claims against Defendant United States are ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

6. Further, this action is properly brought within the six-month period set forth in 28 U.S.C. 2401(b).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) as the cause of action as to Defendant United States arose within the Western District of Oklahoma at the Oklahoma City Veterans Affairs Healthcare System at 921 NE 13th Street, Oklahoma City, OK 73104 ("OKC VA-HCS").

8. Qualified licensed professionals, specifically, Dr. William Irvin, a licensed physician board-certified in Obstetrics and Gynecology as well as Gynecologic Oncology, and Dr. Theresa S. Emory, a pathologist board-certified in Anatomic and Clinical Pathology, have supplied signed reports to Ms. Obregon's counsel stating that the care, skill, and knowledge exercised and exhibited by Defendant's agents, servants, employees, and personnel in the care and treatment of Ms. Obregon that is the subject of this Complaint deviated from the acceptable professional standard of care and caused the harm and damages alleged.

9. Dr. Irvin's expert report is attached as **Exhibit 2**. Dr. Emory's expert report is attached as **Exhibit 3**.

## PARTIES

10. At all times relevant to this action, Defendant United States owned, occupied, and operated the OKC VA-HCS through the Department of Veterans Affairs and related agencies and departments.

11. At all times relevant to this action, the agents, servants, employees, and personnel of Defendant United States were acting within the course and scope of their employment.

12. At all times relevant to this action, Sabrina N. Obregon ("Ms. Obregon") received care and treatment at the OKC VA-HCS.

## FACTUAL ALLEGATIONS

13. Ms. Obregon restates and realleges paragraphs 1 through 12 as if fully stated herein.

14. On July 22, 2016, Ms. Obregon underwent total abdominal hysterectomy and bilateral salpingectomy at the OKC VA-HCS with attending surgeon Daniel Christopher Schultz, M.D. ("Dr. Schultz"), and resident surgeons Erin Elizabeth, D.O. and Alivia Lee Vandersluis, M.D. During the procedure, surgeons removed Ms. Obregon's uterus, cervix, and both fallopian tubes in order to provide relief for Ms. Obregon's uterine fibroids, abnormal uterine bleeding, and anemia.

15. The surgery was completed without apparent complications and Ms. Obregon was taken to a recovery room.

16. Following the surgery, Ms. Obregon experienced adverse symptoms, including pain and tightness in her abdomen; nausea; fevers; tachycardia, or rapid heartbeat; hypotension, or low blood pressure; leukocytosis, or high level of white blood cells; hyponatremia, or low levels of sodium in the blood; and metabolic acidosis, or an excess of acid in the body, with elevated lactate levels. A CT scan of her abdomen and pelvis performed on July 24, 2016, revealed free fluid and air in the abdominal cavity in addition to peritoneal thickening.

17. On July 24, 2016, Ms. Obregon underwent an exploratory laparotomy because her providers suspected she suffered peritonitis and/or a bowel injury during the hysterectomy and salpingectomy procedure. A large amount of gross contamination was found within the intraperitoneal cavity. During this procedure, the surgeon noted a full thickness enterotomy, or a surgical incision into the intestine. To control further spillage, the surgeon put a suture in the enterotomy before moving on to resect the bowel. Providers repaired Ms. Obregon's small bowel by performing a resection and anastomosis, in which they removed a part of her bowel and connected the remaining portions.

18. There were no contributing factors in Ms. Obregon's case that would have increased her risk for bowel injury during pelvic surgery. Further, the injury occurred to an organ, the bowel, that was well removed from the area in which the surgery was performed. Because the bowel was not extensively handled during the surgery, the bowel injury most

likely occurred at the beginning of the procedure, when a peritoneal incision was first made laterally.

19. During Ms. Obregon's initial surgery on July 22, 2016, Dr. Schulz used a Goulet retractor as needed on each side when performing the steps of the hysterectomy. This decision led to a lack of appropriate exposure, which increased the risk for intraoperative injury and could have been prevented had Dr. Schultz instead utilized a self-retaining retractor or fixed retractor.

20. Further, the need for a suture and the evidence of large contamination in the abdomen during Ms. Obregon's subsequent surgery on July 24, 2016, indicates that the original perforation was not small and would likely have been noticeable at the time of the initial surgery on July 22, 2016.

21. Despite the size of the bowel perforation, it was not noted or corrected during the initial surgery on July 22, 2016. In fact, the bowel was never inspected for tears or perforations at all during the initial surgery.

22. Despite the repair of her bowel perforation, Ms. Obregon experienced septic shock after her procedure on July 24, 2016. Providers decided to keep Ms. Obregon's abdomen open for additional washouts due to excessive contamination from the perforated bowel. A negative pressure wound VAC was placed and Ms. Obregon was taken to the Surgical Intensive Care Unit, where she was started on IV antibiotics, and fluids.

23. On July 26, 2016, Ms. Obregon underwent an additional abdominal washout. Upon entry into her abdomen, providers noted purulent fluid in her upper quadrants and pelvis. Her abdomen was washed out with 5L of warmed normal saline. The previous anastomosis was inspected and found to be intact.

24. Providers considered an abdominal closure but determined Ms. Obregon's abdomen should remain open for additional washouts after the procedure. A small-bore feeding tube was placed into her stomach and her abdomen was partially closed before applying another negative pressure dressing. Ms. Obregon was taken to the SICU to await additional adnominal washouts and potential abdominal closure.

25. On July 28, 2016, Ms. Obregon was taken to the operating room again. Her abdomen was explored and found to have minimal contamination. Providers performed another washout, placed a subcutaneous negative pressure wound VAC, and closed her abdomen.

26. The following day, on July 29, 2016, a peripherally inserted central catheter ("PICC") line was placed in Ms. Obregon's right arm for administration of antibiotics long-term.

27. Overnight, proceeding into July 30, 2016, Ms. Obregon experienced oxygen desaturation, a fever of 101.3 degrees Fahrenheit, and an increased white blood cell count. Providers performed a CT scan to rule out a pulmonary embolism. The scan revealed right-sided pneumonia; bilateral atelectasis; and a left-sided pleural effusion, or a buildup of

fluid between the lung and chest tissues that was increasing in size. Ms. Obregon required supplemental oxygen for approximately four days.

28. On July 31, 2016, a left chest tube was placed to drain the pleural effusion.

29. On August 2, 2016, Ms. Obregon's feeding tubes were removed.

30. On August 3, 2016, providers performed additional CT scans, revealing Ms. Obregon was experiencing recurrent abdominal abscesses and that her left-sided pleural effusion was improving. Ms. Obregon was also diagnosed with thrombocytosis, a disorder in which the body produces too many platelets, which was indicative of ongoing infection.

31. On August 5, 2016, Ms. Obregon was diagnosed with deep vein thrombosis ("DVT"), or a blood clot, after developing pain and swelling in her right upper extremity. Providers determined the cause of her DVT was the PICC line and the hypercoagulable state of her blood resulting from her thrombocytosis.

32. To treat her DVT, providers started Ms. Obregon on an anticoagulant, which relieved the pain and swelling in her right upper extremity. Providers also performed a CT-guided aspiration of one of her abdominal abscesses and decided to treat the remaining abscesses with antibiotics.

33. On August 15, 2016, Ms. Obregon was discharged. She was ordered to continue her anticoagulation medication regimen for at least three months to treat her DVT, and to continue receiving long-term antibiotics treatment via her PICC line. She was also directed to follow up regularly with her providers at the OKC VA-HCS and was approved

for 20 at-home skilled nursing visits to assist with her antibiotic therapy and dressing changes for the wound VAC and PICC line.

34. After returning home, Ms. Obregon experienced various medical issues from the surgical complications, including sweats, generalized fatigue and weakness, nausea after eating, vomiting, and constipation. She was forced to rely on others, including her mother and best friend, for all her grooming, bathing, dressing, laundry, dietary, toileting, and hygiene needs. She also required the use of a walker for long distances for several months post-discharge.

35. On September 1, 2016, Ms. Obregon reported to her providers a pruritic rash around her PICC line site.

36. On September 8, 2016, Ms. Obregon again complained of skin irritation and was given alternative dressings and biopatches. During this visit, a small amount of serous fluid drained from her PICC line site. Ms. Obregon was told to report to the Emergency Department ("ED") if the amount of discharge increased, became purulent, or if she became febrile.

37. On September 12, 2016, Ms. Obregon presented to the ED after her home health provider expressed concern that her PICC line might be infected. Ms. Obregon complained of chills and worsening vomiting that had begun the day prior. She was admitted to the OKC VA-HCS for sepsis secondary to PICC line site infection. She was later diagnosed with allergic contact dermatitis at the PICC line site. To alleviate her

infection, providers removed her PICC line and changed her antibiotic regimen to oral administration.

38. On September 14, 2016, Ms. Obregon was discharged.

39. On October 13, 2016, approximately one month later, Ms. Obregon was cleared by the Infection Disease Clinic after her health care-associated pneumonia ("HCAP"), intraabdominal abscesses, and plural effusion finally resolved. She was instructed to stop taking oral antibiotics, which provided relief from her nausea and vomiting.

40. After her surgical procedures and resulting complications, Ms. Obregon experiences several adverse symptoms she did not experience prior to the procedures, including intense acid reflux and epigastric pain after eating. She experiences pain when yawning, sneezing, and breathing deeply or rapidly. This pain results from the chest tube placed during her initial hospital admission. She has a large upside-down T-shaped scar that extends up to her sternum from her exploratory surgery. The scar is raised, with a bubble-like appearance in one area and depth in other areas. Ms. Obregon must take special care to clean the scar because it is prone to collecting dirt, lint, and other pathogens. She will likely have to deal with these symptoms for the foreseeable future.

41. As a direct and proximate result of the OK VA-HCS's negligent care provided to Ms. Obregon, including but not limited to the failures during her initial surgery on July 22, 2016, Ms. Obregon has sustained multiple complications, including sepsis;

9

thrombocytosis; respiratory failure and insufficiency; health care-associated pneumonia; bilateral atelectasis; pleural effusion; the need for a chest tube; the need for a feeding tube; the need for long-term PICC line use; DVT; allergic contact dermatitis; abdominal abscesses; leukocytosis; tachycardia; hypotension; hyponatremia; metabolic acidosis; nausea; vomiting; abnormal bowel moments; acid reflux; abdominal pain; diaphragmatic pain; weakness and fatigue; a very large scar; an extended hospital stay; an additional hospital admission; the need for home health care and extended follow-up care; and past and future lost earnings.

## CLAIMS

### Count I – Negligence

42. Ms. Obregon restates and realleges paragraphs 1 through 41 as if fully stated herein.

43. As a provider of medical services to Ms. Obregon, the United States and its agents, servants, employees, and personnel at the OKC VA-HCS owed Ms. Obregon a duty of reasonable care to provide her care consistent with the governing standard of medical care.

44. The agents, servants, employees, and personnel of the United States at the OKC VA-HCS and its affiliated clinics, while acting within the scope of their employment, violated the applicable standards of medical care in the following respects:

    a.    negligent performance of the total abdominal hysterectomy and bilateral salpingectomy performed by Dr. Schultz, Dr. Brown, and Dr. Vandersluis on July 22, 2016, which caused Ms. Obregon's bowel perforation;

    b.    negligent failure to timely identify, diagnose, and treat Ms. Obregon's bowel perforation during or following the surgery that took place on July 22, 2016; and

    c.    all other deviations from the standard of care which will be developed through further investigation, discovery, and expert review.

## DAMAGES

45. Plaintiff restates and realleges paragraphs 1 through 44 as if fully stated herein.

46. Accordingly, Plaintiff Sabrina N. Obregon claims from Defendant United States the following damages incurred as a proximate result of the negligence of the government's agents, servants, employees, and personnel:

    a.    Economic damages, past and future, including:

        i.    All wages, salaries and other compensation lost; and

        ii.    All costs incurred for medical care, treatment, rehabilitation services, products, and accommodations;

    b.    Noneconomic damages, past and future, including damages for pain and suffering, mental anguish, and other intangible loss; and

c. Any other damages that may be developed through investigation, expert review, and discovery.

WHEREFORE, Plaintiff requests that the Court grant judgment in her favor against Defendant in the amount of THREE MILLION DOLLARS ($3,000,000.00), together with any other costs she may be lawfully entitled to recover.

Dated on this 23rd day of July, 2021.

                                                     Respectfully submitted,

*/s/ Noble McIntyre*
Noble McIntyre, OBA #16359
Jeremy Thurman, OBA #19586
MCINTYRE LAW, P.C.
8601 S. Western Avenue
Oklahoma City, OK  73139
T: (405) 917-5250
F: (405) 917-5405
noble@mcintyrelaw.com
jeremy@mcintyrelaw.com

-and-

*/s/ Brewster S. Rawls*
Brewster S. Rawls, VA Bar No. 23604
Glen H. Sturtevant, VA Bar No. 73458
***Pro Hac Vice Pending***
Rawls Law Group, P.C.
211 Rocketts Way, Suite 100
Richmond, VA 23231
(804) 344-0038
brawls@rawlslawgroup.com
gsturtevant@rawlslawgroup.com

**ATTORNEYS FOR PLAINTIFF**